IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BERNADETTE COLEMAN,

    Plaintiff,

vs.                                   CASE NO. 1:16-cv-311-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

    Defendant.
_____/

# REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"). (ECF No. 1.) The Commissioner has answered (ECF No. 9), and both parties have filed briefs outlining their respective positions. (ECF Nos. 17, 18.) For the reasons discussed below, the undersigned recommends that the Commissioner's decision be reversed and remanded.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill should be substituted for former Acting Commissioner of Social Security, Carolyn W. Colvin, as Defendant in this matter. The Clerk is directed to correct the docket accordingly.

## I.  PROCEDURAL HISTORY

Plaintiff filed her application on December 21, 2011, alleging a disability onset date of March 31, 2011. (R. 124, 260–61.) Plaintiff alleged that she stopped working due to pain in her right hand, back, and knees. (R. 109.) Her application was denied initially and upon reconsideration. (R. 109–30, 132–37.) Following a hearing held on April 22, 2014, and continued on October 20, 2014, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 46–55.) The Appeals Council denied Plaintiff's request for review. (R. 1–7.) On September 23, 2016, Plaintiff filed the instant appeal. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971));

accord *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[2] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

---

[2] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2010 to 2014 and address her lower back, neck, and knee pain as well as an injury to her right hand. These records are from the Alachua County Health Department and Shands Hospital. (R. 379–414, 424–54, 459–91, 507–27.) The opinion evidence consists of consultative examination reports by Dr. Robert Greenberg in 2012 and from Dr. Raul Zelaya in 2014. (R. 419–23, 492–505.)  Because Plaintiff's argument on appeal relates only to the ALJ's treatment of Dr. Zelaya's opinion, that opinion and the ALJ's findings are summarized below.

### A.  Dr. Zelaya

Dr. Raul Zelaya, a board-certified orthopedic surgeon, performed a consultative examination of Plaintiff on May 22, 2014. Plaintiff's main complaints were low back pain, right forearm and hand pain, status-post multiple lacerations, bilateral knee pain, and arthritis. Dr. Zelaya also noted

that Plaintiff was a poor historian, rating her reliability at 2/5. (R. 502.)

During the examination, Plaintiff presented in no acute distress, but she did mimic and use gestures that showed she was experiencing "agonizing" pain. With regard to Plaintiff's upper and lower extremities, she did not have any pain, swelling, tenderness, or gross deformity. She was able to make a fist with both hands displaying significant strength. And an examination of her knees did not reveal anything that correlated with her subjective complaints of pain. Plaintiff had 5/5 motor strength of both upper and lower extremities, although she did display "a self-imposed weakness" when extending her lower extremities against resistance. Plaintiff could also perform fine and dexterous movements with both hands. (R. 503–04.)

When examining Plaintiff's back and spine, Dr. Zelaya noted that there was muscle spasticity at the level of the lumbosacral junction, but Plaintiff also had a negative straight leg raising test. She complained, however, of back pain affecting both knees. All modalities of sensation were found to be within normal limits. (R. 504.)

With regard to her ability to walk, Dr. Zelaya noted that Plaintiff displayed a poor effort during the walking tests. He noted that she was capable of performing the various types of walking without significant

discomfort, but she acted like she was in "severe pain." (R. 504.)

Lastly, in conducting the mental status examination, Plaintiff had slow responses due to her constant complaints of pain. Dr. Zelaya noted, however, that she could follow simple commands and spoke normally. (R. 504.)

Based on the examination and his review of Plaintiff's records, including x-rays of the lumbosacral spine, right forearm, right hand, and both knees, Dr. Zelaya diagnosed Plaintiff with lumbar facet arthropathy and early lumbar discogenic disease. (R. 505.)

Dr. Zelaya also completed a Medical Source Statement. He opined that Plaintiff could lift and carry up to 10 pounds continuously, 11 to 20 pounds frequently, and 21 to 50 pounds occasionally. He also stated that Plaintiff could only sit, stand, and walk for up to one hour at time without interruption. Additionally, in an eight-hour day, she could sit for five hours, stand for one hour, and walk for two hours. He found that Plaintiff had no limitation in the use of her hands or feet, but she did have postural limitations. Plaintiff could only occasionally climb ladders or scaffolds; either occasionally or frequently climb stairs and ramps, kneel, crouch, and crawl; and frequently balance and stoop. (R. 496–99.)

## B. The ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 31, 2011. The ALJ found Plaintiff had severe impairments of cervical and lumbar spondylosis; chronic low back pain; arthritis, multiple sites; chronic hip pain; chronic right forearm and right hand pain; and history of substance abuse (cocaine and marijuana). Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 48–49.)

With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). (R. 49.)

In making this determination, the ALJ noted Plaintiff's history of seeing physicians at UF Shands and the County Health Department since her alleged onset date. The ALJ found that the objective lab data and clinical findings did not support that her impairments were severe enough to find her "disabled." Specifically, the ALJ discussed recent lumbar and cervical MRIs that revealed only mild findings. The ALJ also discussed the rather benign and unremarkable findings from Dr. Falchook as well as

negative x-rays for right knee pain and back pain examined by Dr. Fiola. Further, the ALJ noted that multiple examiners have questioned Plaintiff's credibility, such as Dr. Zelaya and Dr. Greenberg. (R. 49–51.)

The ALJ also discussed Plaintiff's consultative examinations. The ALJ found that the physical examinations by both Dr. Zelaya and Dr. Greenberg resulted in relatively normal findings. Dr. Greenberg, who examined Plaintiff in 2012, found that Plaintiff had full range of motion in all extremities with decreased range of motion in the lumbar spine, hips, and knees. He also found that Plaintiff had 4/5 muscle strength in both legs. He diagnosed Plaintiff with osteoarthritis of the hips, knees, and lumbar spine as well as weakness in the right hand and forearm. Dr Zelaya, however, found that Plaintiff had 5/5 motor strength in her extremities and diagnosed her with lumbar facet anthropathy and early lumbar discogenic disease when he examined her in 2014. (R. 51.)

The ALJ also noted a stark contrast between the two consultative examination reports. Whereas Dr. Greenberg noted "almost total absence of right grip strength," Dr. Zelaya found that Plaintiff had significant strength when making a fist. The ALJ concluded that this distinction was a result of the poor effort that Plaintiff exhibited during her May 2012 examination with

Dr. Greenberg. (R. 52.)

The ALJ found that these consultative examination reports were consistent with Plaintiff's progress reports and treatment records from UF Shands and the County Health Department. Those medical records and reports included generally normal exam results, mild to moderate findings with regard to Plaintiff's spine, and no major changes in treatment, which was routine and conservative. (R. 52.)

In assessing Plaintiff's impairments in regard to her daily living activities, the ALJ recounted testimony from the hearing. Plaintiff testified about pain all over her body from a physical assault that occurred over ten years prior to the hearing. As a result of this pain, Plaintiff said she cannot sit, stand, or walk for long periods of time. She said she can only walk 2–3 blocks before needing a break and can only sit for 1–2 hours before needing to lie down. Plaintiff also said she cannot lift or carry more than 3–4 pounds. Plaintiff, however, did testify to engaging in many activities of daily living, such as laundry, errands, and housecleaning. (R. 52.)

Based on all of the above evidence and testimony, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's

statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. 53.)

Because no treating physician assessed Plaintiff's workplace limitations, the ALJ turned to the opinion evidence and the weight assigned to each opinion. Dr. McClure, who testified at the hearing, diagnosed Plaintiff with spondylosis of the cervical and lumbar spine and a history of cocaine and marijuana abuse. He opined that based on the medical evidence, Plaintiff was capable of performing light work. The ALJ concluded that his opinion was entitled to great weight because it was an accurate summary of the medical evidence in the record. (R. 53.)

The ALJ determined that Dr. Zelaya's opinion, discussed in greater detail above, was entitled to significant weight, although less weight than Dr. McClure's opinion. As an explanation for this assignment of weight, the ALJ stated that Dr. Zelaya's opinion was "generally consistent with the evidence of record," but the ALJ found Plaintiff "somewhat more limited, physically." (R. 54.)

Lastly, the ALJ briefly discussed the opinions of the non-examining State agency medical consultant, Dr. Le. He found that Plaintiff had no severe impairments. The ALJ said that his opinion included an accurate

summary of the medical evidence that existed at the time of his review but that additional evidence indicates greater limitation and a conclusion that Plaintiff does have severe impairments. The ALJ, therefore, concluded that Dr. Le's opinion was only entitled to limited weight. (R. 54.)

Ultimately, the ALJ found that Plaintiff is capable of performing her past relevant work as a commercial/institution cleaner (as actually performed) and Cleaner Housekeeping (as actually and generally performed). Notably, the ALJ made this finding "per vocational expert testimony (Light work with sit/stand option every 30 minutes)." Accordingly, the ALJ concluded that Plaintiff was not under a disability from March 31, 2011, through the date of the decision. (R. 54–55.)

## IV.  DISCUSSION

Plaintiff argues that although the ALJ assigned "significant weight" to the opinion of examining consultative physician Dr. Zelaya, the ALJ failed to explain why he was not crediting the part of Dr. Zelaya's opinion that Plaintiff could not stand for more than one hour or walk for more than two hours in an eight-hour workday. Plaintiff says that the Court should reverse the decision of the Commissioner and remand the case with instructions that Dr. Zelaya's opinion be properly analyzed, including the portion of the

opinion that limits Plaintiff's standing and walking. (ECF No. 17 at 35–40.)

Dr. Zelaya, a consulting orthopedic surgeon, performed an examination of Plaintiff in March 2014. Relevant to this discussion, Dr. Zelaya opined that Plaintiff could lift and carry 10 pounds continuously, 20 pounds frequently, and 50 pounds occasionally. He also opined that in an eight-hour workday, Plaintiff could sit for five hours, stand for one hour, and walk for two hours. (R. 496–505.)

In discussing this opinion, the ALJ wrote that he gave Dr. Zelaya's opinion "significant weight." In support of the ALJ's decision to accord the opinion significant weight, the ALJ said that the opinion is generally consistent with the record evidence but that Plaintiff is "somewhat more limited, physically."[3] (R. 53–54.)

As required by *Winschel v. Commissioner of Social Security*, "the ALJ must state with particularity the weight given to different medical opinions *and the reasons therefor*." 631 F.3d 1176, 1179 (11th Cir. 2011) (emphasis added) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). This information and explanation allows "a reviewing

---

[3] Notably, in discussing this opinion, the ALJ also said that Dr. Zelaya "found the claimant having the ability to perform 'medium' to 'light' work as defined by the Regulations." (R. 53.) Dr. Zelaya's findings, however, do not support that conclusion.

court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* at 1178–79 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). When an ALJ "fails to 'state with at least some measure of clarity the grounds for his decision,' [the reviewing court] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

Although the ALJ stated that he gave significant weight to Dr. Zelaya's opinion, the ALJ's reasoning that Plaintiff is "somewhat more limited, physically" is inadequate and contradicted by other portions of the ALJ's opinion.

First, the ALJ did not state or specify how Plaintiff was physically more limited or cite to any evidence in the record. Second, as explained in greater detail below, this reasoning is contradicted by the fact that the ALJ concluded that Plaintiff is capable of light work and assigned greater weight to a different opinion that Plaintiff could perform light work.[4]

Either the ALJ's RFC determination failed to account for critical areas

---

[4] Specifically, the ALJ stated that he "accords greater weight to Dr. McClure's opinion, but still grants significant weight to Dr. Zelaya's medical source statements in determining the claimant's overall limitations." (R. 53–54.)

in Dr. Zelaya's opinion or the ALJ failed to articulate his reasons for not giving significant weight to some of Dr. Zelaya's findings. Thus, while the ALJ found Plaintiff capable of performing light work, Dr. Zelaya opined that in an eight-hour workday Plaintiff could only sit for five hours, stand for one hour, and walk for two hours. Dr. Zelaya's opinion about Plaintiff's ability to sit, stand, and walk does not support a finding that Plaintiff was capable of performing even light work.[5]

> The requirements for light work have been described as follows:
>
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b) (2016). Although there are different requirements for light work, most light work requires prolonged periods of standing or walking. *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("Relatively few unskilled light jobs are performed in a seated position."). As the Eleventh Circuit has described, "light work requires standing or walking, on

---

[5] While it is true that Dr. Zelaya's opinion regarding Plaintiff's ability to lift and carry exceeded the demands required for light work, the same is not true for Dr. Zelaya's opinion about Plaintiff's ability to sit, stand, and walk.

and off, for approximately six hours out of an eight-hour day." *Mart v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 961 (11th Cir. May 19, 2016) (citing 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983)).

Because most light work requires significant standing and walking, the ALJ either should have included Dr. Zelaya's findings in making his RFC determination or he should have explained why he decided to omit these limitations from Plaintiff's RFC. In other words, the ALJ should have addressed Dr. Zelaya's opinion that Plaintiff had the severe limitations of standing for only one hour and walking for only two hours in an eight-hour day.

Rather than addressing Dr. Zelaya's limitations on standing and walking, the ALJ made the contradictory conclusions that Plaintiff is somewhat more limited physically than Dr. Zelaya opined and yet capable of light work, which requires Plaintiff to stand or walk on and off for far longer than Dr. Zelaya opined was possible for Plaintiff.[6] Because the ALJ

---

[6] The specific work that the ALJ found Plaintiff capable of performing included past relevant work as a commercial or institutional cleaner and cleaner housekeeping. (*See* R. 54.) Based on the titles of these occupations alone, it is clear that such light work would require significant periods of standing or walking rather than significant periods of sitting.

found Plaintiff capable of light work, the ALJ must have concluded that Dr. Zelaya's limitations on standing and walking were not entitled to significant weight or the ALJ must have overlooked that portion of Dr. Zelaya's opinion. It is therefore unclear why the ALJ found Dr. Zelaya's entire opinion entitled to significant weight but found Plaintiff capable of light work.

While the ALJ was not required to adopt Dr. Zelaya's opinion wholesale, the ALJ was required to explain what portions of Dr. Zelaya's opinion he assigned significant weight and explain the reasons he did not credit Dr. Zelaya's opinion with regard to those areas where Dr. Zelaya found Plaintiff far more limited than the ALJ's RFC assessment. *See Winschel*, 631 F.3d at 1179 (requiring that the ALJ must state both the weight given to each opinion *and* the reasons for doing so).

Because the ALJ failed to address all portions of Dr. Zelaya's opinion in explaining why he found the opinion entitled to significant weight, the case must be reversed and remanded to the Commissioner so that the ALJ can further evaluate the opinion of Dr. Zelaya and explain the ALJ's reasons for not crediting the entire opinion with significant weight. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (noting that the

failure of the ALJ to state the weight given to the evidence and why precludes reviewing courts from properly addressing the decision); *see also Clifton v. Comm'r of Soc.* Sec., No. 6:14-cv-1111-Orl-40TBS, 2015 WL 1806276 (M.D. Fla. Apr. 20, 2015) (reversing and remanding where the ALJ determined the plaintiff could perform light work and yet assigned great weight to an opinion that said the plaintiff was limited to standing for two hours per day, without addressing the opinion's limitation on standing).

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) for additional proceedings consistent with this report and recommendation.

**IN CHAMBERS** on this 4th  day of August 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic</u>**

**docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.